# IN THE COURT OF APPEALS OF IOWA

No. 19-1611
Filed June 17, 2020

**FIDEL TAYLOR,**
Plaintiff-Appellant,

**vs.**

**GAZETTE COMMUNICATIONS, INC. d/b/a COLOR WEB PRINTERS, INC.,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Sean W. McPartland, Judge.

A worker appeals from the district court's order granting summary judgment and dismissing his claim. **AFFIRMED.**

J. Richard. Johnson of Johnson & Legislador, P.L.C., Cedar Rapids, for appellant.

Janice M. Thomas and Thomas M. Boes (until withdrawal) of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**SCHUMACHER, Judge.**

After using a labor broker for employment with a commercial printing company, the plaintiff was injured while working with a printing machine. He made a claim for workers' compensation benefits and brought suit against the printing company for negligence. However, the employment agreement he entered into with the labor broker contained an exculpatory provision that provided he would, in case of injury, look only to the labor broker's workers' compensation insurance and not bring suit against the labor broker's clients. The district court granted summary judgment and dismissed the plaintiff's suit against the printing company on the ground that the exculpatory provision barred his suit. We affirm.

## I. Background Facts and Proceedings

Aerotek, Inc. (Aerotek) is a labor broker. It contracts with individuals and companies to provide employers with temporary supplemental staffing. Gazette Communications, Inc., d/b/a Color Web Printers, Inc. (Gazette), entered into a Services Agreement in 2013 to memorialize this type of relationship.

In April 2016, Fidel Taylor,[1] accepted a conditional offer of employment from Aerotek to work at Gazette's facility in Cedar Rapids. This agreement was recorded in a conditional employment agreement (CEA). On June 4, 2016, Fidel suffered a partial amputation of his left-hand pinkie finger while operating a bottom wrap machine at Gazette's facility. He filed a claim for workers' compensation benefits and on May 30, 2018, filed suit against Gazette for negligence.

---

[1] Fidel Taylor's name appears as "Fidel Ngenzebuhoro" several times in the record, including on the conditional employment agreement, which is central to the issues on appeal. The parties have not explained this discrepancy, nor do they treat it as material. To avoid confusion, we refer to the plaintiff as Fidel.

Gazette filed a motion for summary judgment on June 19, 2019. In the motion, Gazette argued that Fidel's suit was barred by both an exculpatory provision found in paragraph twelve of the CEA and by Iowa Code section 85.20 (2018). The CEA provides as follows:

> 12. Limitation of Liability - To the extent permitted by law, you, on your own behalf and on behalf of anyone claiming by or through you, waive any and all rights you have, or may have, to claim or assert a claim, suit, action or demand of any kind, nature or description, including without limitation, claims, suits, actions or demands for personal injury or death whether arising in tort, contract or otherwise, against Client or Client's customers, agents, officers, directors, or employees, resulting from or arising directly or indirectly out of your employment with Aerotek, Inc. You recognize and agree that Aerotek, Inc provides workers' compensation coverage for such things as on-the-job injuries or occupational diseases incurred while on assignment for Aerotek, Inc, and you agree to look solely to Aerotek, Inc and/or its insurer for damages and/or expenses for such injury, illness or other claims incurred while on assignment. In furtherance of the foregoing and in recognition that any work related injuries which might be sustained by you are covered by state Workers' Compensation statutes, and to avoid the circumvention of such state statutes which may result from suits against the Clients of Aerotek, Inc based on the same injury or injuries, and to the extent permitted by law, YOU HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS YOU MIGHT HAVE to make claims or bring suit against the Client of Aerotek, Inc for damages based upon injuries which are covered under such Workers' Compensation statutes. You agree to notify Aerotek, Inc if you believe that there are any unsafe conditions at the Client worksite or facility.

The district court granted Gazette's motion for summary judgment, determining that this exculpatory provision barred Fidel's suit. The district court also found that material disputes of fact precluded a grant of summary judgment on the ground that Fidel's suit was barred by Iowa Code section 85.20. However, the district court found the exculpatory provision dispositive and dismissed Fidel's petition. Fidel appeals from the court's order granting summary judgment.

## II. Standard of Review

In reviewing a lower court's grant of a motion for summary judgment, we follow the well-established standard of review for such orders.

> A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the record reveals a conflict only concerns the legal consequences of undisputed facts. When reviewing a court's decision to grant summary judgment, we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact.

*Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139–40 (Iowa 2013) (citation omitted).

## III. Discussion

On appeal, Fidel contends the exculpatory clause in paragraph twelve of the CEA "is not enforceable because Aerotek breached the contract by failing to ensure that Fidel received site specific training and that he was working with properly guarded equipment in a safe workplace." He further argues that paragraph twelve of the CEA "is not applicable to the facts of this case" and that there are material issues of fact which preclude summary judgment. He also claims that "Aerotek delegated the duties of training and providing a safe workplace for contract employees" to Gazette and that Gazette "breached the Services Agreement by failing to provide a safe workplace or appropriate training to Fidel."

We conclude the exculpatory clause is valid and enforceable. We find Fidel's allegation that Aerotek breached the contract to be misplaced because the provisions he alleges were breached do not in fact exist in the CEA. We find the

exculpatory clause to be dispositive and determine that no disputes over material facts preclude its application. We reject the remainder of Fidel's arguments and affirm the grant of summary judgment.

### A. Disputes of Material Fact

The party resisting a motion for summary judgment "must set forth specific facts showing that a genuine factual issue exists." *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993). Fidel argues there are disputed issues of material fact regarding whether Aerotek breached the conditional employment contract, however he does not specify which facts are disputed. Following our review of the record, we conclude that whether the CEA's exculpatory provision bars Fidel's suit is not dependent on any disputed facts. We find that this case can be disposed of on the basis of an analysis of the contractual provisions, which are not disputed. Determining the legal effect of a contract "is a matter of law to be resolved by the court." *Id.* at 55–56.

### B. Applicability of Exculpatory Provision

The exculpatory clause in paragraph twelve of the CEA is valid and enforceable. Fidel does not dispute the enforceability of such waivers.

"Contracts releasing persons from liability for their own negligent acts have been found to be enforceable and are not contrary to public policy." *Grabill v. Adams Cty. Fair & Racing Ass'n*, 666 N.W.2d 592, 596 (Iowa 2003). We have upheld contract provisions in which an individual agrees in a labor brokerage contract that, in the event the individual is injured at the workplace of the labor broker's client, the individual's remedies shall be limited to a claim under the labor broker's workers' compensation insurance and shall not include a damages claim

against the labor broker's client. *E.g.*, *Cupps v. S & J Tube, Inc.*, No. 17-1922, 2019 WL 156583, at *5 (Iowa Ct. App. Jan. 9, 2019); *Hargrave v. Grain Processing Corp.*, No. 14-1197, 2015 WL 1331706, at *3 (Iowa Ct. App. Mar. 25, 2015).

Here, Fidel agreed that he would "look solely to Aerotek, Inc and/or its insurer for damages and/or expenses" resulting from a workplace injury, and he agreed to waive any rights he had against Aerotek's clients for damages based upon injuries covered by workers' compensation insurance and the applicable statutes. We do not find the CEA's exculpatory clause to be materially distinguishable from *Cupps* and *Hargrave*. It is enforceable by Gazette. *See Cupps*, 2019 WL 156583, at *3; *Hargrave*, 2015 WL 1331706, at *3.

### C. Whether Aerotek Breached the CEA

We next consider Fidel's argument that the exculpatory provision is inapplicable because Aerotek breached "by failing to ensure that Fidel received site specific training and that he was working with properly guarded equipment in a safe workplace." Fidel argues that the exculpatory provision in paragraph twelve of the CEA "is conditioned upon Aerotek's compliance with the terms of the conditional employment contract."

"It is a basic principle of contract law that once one party to a contract breaches the agreement, the other party is no longer obligated to continue performing his or her own contractual obligations." *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 641 (Iowa 2000). The breach must be material to excuse performance. *Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 692 (Iowa 1999).

To determine whether Aerotek breached, we look to the contract terms, seeking to determine whether Aerotek made the contractual promise Fidel alleged was made. "A party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract." *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). We conclude Aerotek has not breached because it did not make the "promise which forms a whole or a part of the contract" that Fidel alleges was made. Specifically, we find that Aerotek did not agree in the CEA "to ensure that Fidel received site specific training and that he was working with properly guarded equipment in a safe workplace."

Fidel asserts three times that Aerotek agreed to ensure Fidel would have a safe workplace. First, he says "Aerotek agreed to place Fidel in a work environment free of hazards (like unguarded machinery) and to comply with IOSHA safety regulations." Next, "Aerotek promised Fidel he would receive site specific training before starting work at the Color Web plant. Aerotek breached that promise." Finally, "Aerotek promised Fidel he would be working in a safe workplace and that promise was breached as well." None of these assertions are accompanied by citations to the record. Aerotek did not make the promises Fidel has asserted were made. The CEA does not contain provisions relating to safety or hazards.

To support his theory, Fidel notes that he was provided a form titled "Verification of Instruction," and he points to language in that document regarding "site specific safety training." The Verification of Instruction indicated that Fidel agreed as follows:

> I, Ngenzebuhoro Fidel have read the Aerotek, Inc Contract Employee Safety Handbook and viewed the Aerotek, Inc General Awareness Safety Training Video. I understand that:
>
> 1. I am to receive site specific safety training from the Aerotek, Inc Client before beginning my assignment.
>
> 2. I am to wear all appropriate personal protective equipment required by my assignment.
>
> 3. I am to report any injury or illness **IMMEDIATELY** to the Client Supervisor and my Aerotek, Inc representative.
>
> 4. I am to report any unsafe condition or situation that I am untrained to handle to my Client Supervisor, Aerotek, Inc representative or to the Aerotek Safety Hotline.
>
> 5. I am to immediately report back to the Aerotek, Inc office if I am asked to do anything outside of the position or work function I was originally placed to perform.

The Verification of Instruction then lists topics discussed in the safety handbook. Fidel electronically signed and dated the document.

Aerotek made no promises in the Verification of Instruction; it is only an acknowledgement by Fidel that he "understand[s]" five instructions related to safety. We do not read the Verification of Instruction as creating contractual duties on Aerotek's part, and even if we did, the CEA's integration and merger clause, found in paragraph thirteen, requires that we ignore prior agreements and read the CEA to be "the entire agreement of the parties." We find it was not possible for Aerotek to breach the terms of CEA in the manner Fidel alleges occurred, because the contract does not create the duties Fidel alleges have been breached. We therefore reject the argument that the CEA's exculpatory provision is inapplicable due to Aerotek's alleged breach.

### D. Effect of the Services Agreement

Although somewhat unclear, Fidel seems to argue that paragraph twelve of the CEA should not bar his suit because he is a third-party beneficiary of the Services Agreement. In paragraph 15.14.4 of the Services Agreement, Gazette

promised Aerotek, inter alia, that it would provide a safe work environment, obey the requirements of government agencies, and train the contract employees. Fidel alleges that Gazette breached the promises it made in the Services Agreement to Aerotek.

Fidel disputes the district court's characterization of this argument. The court said, "Plaintiff contends the waiver in ¶ 12 of the conditional employment contract was conditioned on the client's [Gazette / Color Web] compliance with the terms of the Services Agreement." Fidel seeks to clarify what he perceives to be a misstatement of his argument: "Fidel's argument is that the enforcement of the Limitation of Liability provision (¶ 12) (by any client as a third-party beneficiary) is conditioned upon Aerotek's compliance with the terms of the conditional employment contract." Yet, although Fidel disclaims the argument that the CEA's exculpatory provision was conditioned on Gazette's compliance with the terms of the Services Agreement, he devotes one and one-half pages of his appellate brief to the Services Agreement and argues that Gazette breached paragraph 15.4.4, which pertains to Gazette's responsibilities with respect to safety. Additionally, he says that his "claim of negligence against Gazette . . . is based on these breaches of duty (training and safe work place) derived *from the Services Agreement.*" (Emphasis added). We understand his complaint over Gazette's alleged breach of the Services Agreement as an argument either that (1) Gazette's alleged breach of the Services Agreement nullifies the exculpatory clause in the CEA, or (2) Gazette's alleged breach of the Services Agreement gives Fidel a right to enforce the Services Agreement as a third-party beneficiary. We reject both manifestations.

First, we find nothing in the CEA indicating that the CEA's exculpatory provision is conditioned on the terms or performance of the Services Agreement and, as we have already discussed, the CEA contains a merger and integration provision. Thus, even assuming *arguendo* that Gazette breached the Services Agreement, the CEA's exculpatory clause is still enforceable.

Second, Fidel does not have standing to enforce the provisions of the Services Agreement as a third-party beneficiary, because the Services Agreement, which contains a merger and integration clause, expressly refrained from conferring rights on third parties. Section 15.5 of the Services Agreement provides, "Except as otherwise specifically provided, this Agreement is not intended and shall not be construed to confer upon or to give any person other than the parties any rights or remedies." "When a contract expressly negates the creation of third-party beneficiaries," we reject such claims. *RPC Liquidation v. Iowa Dep't of Transp.*, 717 N.W.2d 317, 320 (Iowa 2006). The Services Agreement "expressly negate[d] the creation of third-party beneficiaries," and therefore Fidel has no rights as a third-party beneficiary. *See id.*

**E. Indemnification, IOSHA Violations, and Contract Law Principles**

Fidel raises three additional concerns centered on alleged defects in Gazette's performance under the Services Agreement. First, he notes that Gazette agreed to "indemnify AEROTEK and hold it harmless against and from any claims made or brought as a result of [Gazette's] breach of its obligations." We are unconvinced that the indemnification clause in the Services Agreement is relevant to this appeal. It is not clear why Gazette's promise to indemnify Aerotek would be relevant, as Fidel filed suit against Gazette, not Aerotek.

Second, Fidel notes that Gazette admitted to violations of various rules in a settlement agreement with the Iowa Occupational Safety and Health Administration (IOSHA). Even if IOSHA violations by Gazette constitute a violation of the Services Agreement—a question on which we take no position—we have found nothing in the CEA which indicates the CEA's exculpatory provision is conditioned upon Gazette's compliance with the Services Agreement.

Lastly, Fidel invokes several principles of contract law we find inapplicable here. He argues that he "'justifiably expected' . . . training and working in a safe workplace," quoting *Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 692 (Iowa 1999). He claims elsewhere in his brief that "Aerotek delegated the duties of training and providing a safe workplace for contract employees." Aerotek did not contractually assume either the duty of training Fidel for work at Gazette or the duty of ensuring that the Gazette workplace would be safe. To the extent Aerotek had the duties Fidel alleges were breached, they were not created by the CEA and can only have existed under the law of tort. However, Fidel contracted away his right to a tort remedy for those alleged breaches when he entered into the CEA, and a provision excusing a party from its own negligence—like the exculpatory provision here in question—will overcome a person's duty to provide safe premises. *See Huber*, 501 N.W.2d at 55. Additionally, while Fidel claims he "expected" training and safe conditions from Aerotek, Aerotek did not contract to provide such conditions, and it therefore could not have contractually delegated to Gazette the duty to provide such conditions by way of the Services Agreement.

**F. Statutory Preclusion**

The district court determined that questions of material fact precluded a grant of summary judgment to the extent it was based on the ground that, pursuant to Iowa Code section 85.20, a worker's compensation award was Fidel's exclusive remedy. Because we find that the CEA's exculpatory provision bars Fidel's suit, we need not consider the applicability of section 85.20.

## IV. Conclusion

We find that Aerotek did not breach its agreements with Fidel, because it did not make the promises Fidel alleges were breached. The exculpatory clause in paragraph twelve of the CEA can be enforced by Gazette. We further conclude that Fidel is not a third-party beneficiary of the Services Agreement and therefore cannot enforce any alleged breach of that agreement by Gazette. Additionally, any alleged breach by Gazette of the Services Agreement does not impact the exculpatory provision of the CEA, as the CEA is not conditioned on the Services Agreement and contains a merger and integration clause. Even if Gazette breached the Services Agreement, Fidel is barred from bringing the instant suit by the exculpatory provision in the CEA. Because we, like the district court, find the exculpatory provision dispositive, we affirm the district court's grant of summary judgment dismissing Fidel's claim, and do not consider the applicability of Iowa Code section 85.20.

**AFFIRMED.**